

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**

**JUDGE**

# LETTER OPINION

June 25, 2009

William A. Krais
Porzio, Bromberg & Newman, PC
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
(*Attorney for Plaintiffs Keith Kulper and Denise Kenny Kulper*)

Pamela R. Perron
Office of the U.S. Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
(*Attorney for Defendant United States of America*)

Craig S. Combs
Paul Jason Miller
Giblin & Combs
10 Madison Avenue
Box 1297
Morristown, NJ 07962
(*Attorney for Defendants Jeanne Schwartz and Morris Imaging Associates*)

Louis A. Ruprecht
Ruprecht, Hart & Weeks, LLP
306 Main Street
Millburn, NJ 07041
(*Attorney for Defendants Brian Walsh and Emergency Medical Associates*)

Michael Samuel Bubb
Bubb, Grogan & Cocca, LLP
25 Prospect Street
Morristown, NJ 07960-0796
(*Attorney for Defendant AHS Hospital Corporation/Morristown Memorial Hospital Campus*)

  **Re: Kulper et al. v. United States of America et al.**
    <u>**Civil Action No. 2:08-CV-04504 (WJM)**</u>

Dear Counsel:

  This matter comes before the Court on Defendant United States's motion for summary judgment. The Court did not hold oral argument. Fed. R. Civ. P. 78. For the following reasons, the United States's motion for summary judgment is **GRANTED**. Lacking federal question jurisdiction, Plaintiffs' state law claims in Counts One and Two are also **DISMISSED**.

<u>**BACKGROUND**</u>

  Keith Kulper is blind in his left eye. (Pls.' Responsive Statement of Facts (hereinafter "Pls.' SF") ¶ 7, at 5.) An untreated benign tumor pressed against an optic nerve, causing permanent damage. (*Id.*) Plaintiffs allege that radiologists at Defendant AHS Hospital Corporation/Morristown Memorial Hospital Campus ("Morristown Memorial"), during an August 19 and 20, 2005 visit, improperly interpreted a CT scan and failed to order tests and consultations that could have prevented this loss of vision. Plaintiffs contend that these doctors deviated from the standard care in one of the following ways. Dr. Lee Kuxhaus, a resident radiologist employed by the United States Air Force, did not inform Dr. Brian Walsh, an emergency room attending physician, about a suspicious mass revealed by a CT scan. (*Id.* ¶ 5, at 4.) The failure to convey this information not only contradicted the directions of attending radiologist, Dr. Jeanne Schwartz, but prevented Dr. Walsh from ordering additional MRI imaging. (*Id.* ¶¶ 3, 6, at 3-4.) Alternatively, Plaintiffs maintain that Dr. Walsh neglected to order supplemental tests and consultations after being told about a suspicious mass by Dr. Kuxhaus. (*Id.* ¶¶ 5-6, at 4.)

  On September 9, 2008, Plaintiffs filed a two count Complaint against the United States, Morris Imaging Associates, Dr. Walsh, Dr. Schwartz, Emergency Medical Associates, Atlantic Health System, and Morristown Memorial alleging negligence and

loss of consortium.[1]  In lieu of answering, the United States filed a motion for summary judgment on March 4, 2009.

## STANDARD OF REVIEW

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A court should grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists rests initially on the moving party.  *Celotex*, 477 U.S. at 323.  Once the moving party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

## DISCUSSION

In its motion for summary judgement, the United States asserts that it should not be held vicariously liable under the Federal Tort Claims Act ("FTCA")[2] for the conduct of radiology resident and Air Force employee Dr. Kuxhaus because Dr. Kuxhaus qualifies

---

[1]  Plaintiffs originally brought this action, on July 30, 2007, in the Superior Court of New Jersey, Morris County, against Defendants Dr. Lee Kuxhaus, Dr. Schwartz, Dr. Walsh, Morristown Memorial, and Atlantic Health Systems.  On March 12, 2008, the United States Attorney certified that Dr. Kuxhaus had been acting within the scope of her federal employment as an officer in the United States Air Force and removed the case to federal court. (Pls.' SF ¶ 10, at 5-6.)  Shortly thereafter, the parties agreed that the removed action would be dismissed to allow Plaintiffs to exhaust their administrative remedies.  (*Id.* ¶ 11, at 6.)  The parties further agreed that following a 6-month review period, which would expire on August 15, 2008, Plaintiffs would re-file their complaint in federal court and Defendants would waive any defenses relating to the statute of limitations.  (*Id.*)  The Honorable Katherine S. Hayden entered an Order to this effect on April 30, 3008.  (*Id.*)

[2]  The FTCA provides "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  This waiver includes "claims . . . for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of" a government employee.  28 U.S.C. § 1346(b)(1).

as a "borrowed servant."[3]  A borrowed servant, also known as a "special employee" is an individual employed by a "general employer," while on loan to or working for a "special employer."  Here, the United States maintains that the Air Force acted as Dr. Kuxhaus's "general employer," while Morristown Medical constituted Dr. Kuxhaus's "special employer."  This relationship made Dr. Kuxhaus a "borrowed servant," absolving the government of liability under the FTCA.

In *Galvao v. G.R. Robert Construction Co.*, 179 N.J. 462 (2004), the Supreme Court of New Jersey adopted a two pronged test to determine whether a general employer may be held vicariously liable for the alleged negligence of its special employee on loan to a special employer.  *Id.* at 471-73.  Under the first prong, a court looks to see if the general employer "controlled" the special employee.  *Id.* at 471-72.  If the general employer exercised such "control," a court inquires into whether the special employee "furthered the business of the general employee."  *Id.* at 472-73.  If both of these conditions are met, the general employer may be held vicariously liable for the alleged negligence of a special employee.  *Id.* at 473.

"Control" refers to *respondeat superior* liability in the fundamental sense.  In other words, "the right to direct the manner in which the business shall be done, as well as the result to be accomplished . . . not only what shall be done, but how it shall be done."  *Id.* at 471-72.  An employer's control can be inferred based on the "method of payment, who furnishes the equipment, and [the] right to termination," as well as evidence of "direct," "broad," or "on-spot" control "over the means by which the task is accomplished."  *Id.* at 472.  A special employee "furthers the business of a general" employer if "the work being done [by the special employee] is within the general contemplation of the [general employer] and the general employer derives an economic benefit by loaning its employee."  *Id.* at 472-73.

Turning to the facts at hand, Plaintiffs establish that the Air Force received an "economic benefit" within its "general contemplation" by loaning Dr. Kuxhaus's services to a special employer.  Dr. Kuxhaus received specialized training in the area of radiology from Morristown Memorial.  (Pls.' SF ¶ 17, at 7, Def.'s Statement of Facts (hereinafter "Def.'s SF") ¶ 8, at 4.)  The Air Force anticipated using this specialized training, following Dr. Kuxhaus's residency, by staffing her at an Air Force medical center.  (Pls.' SF ¶ 21, at 8.)  This knowledge and benefit fell within the Air Force's legitimate "business interest" of providing health care services to its soldiers.  Moreover, the work performed by Dr. Kuxhaus, at the time of the alleged negligence, was within the "general

---

[3]  The United States is entitled to the same defenses as a private citizen, including the "borrowed servant" defense.  *See Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996).  Since the alleged conduct occurred in Morristown, New Jersey, New Jersey state law applies.

4

contemplation" of the Air Force.  By entering into the arrangement with Morristown Memorial, the Air Force knew that Dr. Kuxhaus would be treating civilian patients and that during the course of these treatments would review medical imaging.

However, the Air Force did not exercise "control" over Dr. Kuxhaus, as articulated in *Galvao*.  Both parties agree that the Air Force retained a measure of administrative control over Dr. Kuxhaus.  The Air Force paid Dr. Kuxhaus's salary and benefits and required that she complete an annual physical training requirement by reporting to an ROTC office in Newark.  (Def.'s SF ¶¶ 7, 22.)  During the course of the residency, she submitted annual reports detailing her progress and served as an officer, receiving promotions in grade and rank.  (Pls.' SF ¶ 18, at 7-8, Def.'s SF ¶ 16.)

Even so, this form of control does not qualify as "direct," "broad," or "on spot" control.  An agreement defined the relationship between the Air Force and Morristown Memorial, which described Dr. Kuxhaus as "the servant of the institution" performing her duties under the "exclusive control" of Morristown Memorial.  (Def.'s SF ¶ 7.)  Under the terms of the contract, the hospital assumed the right to train and supervise Dr. Kuxhaus and also agreed to purchase malpractice insurance to cover her conduct.  (*Id.*)

Morristown Memorial treated Dr. Kuxhaus like other radiology residents employed by the hospital.  Attending radiologists supervised her day-to-day work and evaluated her performance.  (*Id.* ¶¶ 10, 12.)  She worked the same hours, followed the same curriculum, attended the same lectures, and abided by the same hospital rules.  (*Id.* ¶ 19.)  As a member of the hospital's radiology residency program, the director of this program could terminate Dr. Kuxhaus's appointment.  (*Id.* ¶ 24.)  Dr. Kuxhaus even treated patients with sophisticated imaging equipment furnished by the hospital.  (*Id.* ¶¶ 12, 18.)

Plaintiffs attempt to avoid this conclusion by arguing that the hospital lacked "exclusive control" over Dr. Kuxhaus, pursuant to the agreement between Morristown Memorial and the Air Force.  They contend that Dr. Schwartz, not Morristown Memorial, acted as Dr. Kuxhaus's "special employer," because Dr. Schwartz was employed as an independent contractor.  (Pls.' SF ¶ 2, at 3.)  Dr. Schwartz supervised Dr. Kuxhaus, reviewed her radiology studies, and signed off on the relevant reports.  (*Id.* ¶¶ 1, 3, at 3-4; Def.'s SF ¶¶ 5, 9 and 26.)

For purposes of this motion, it is immaterial whether Dr. Schwartz acted as the "special employer" of Dr. Kuxhaus.  Both parties agree that the United States is the general employer.  (Pls. Mem. of Law in Opp'n to Def. Mot. Summ. J. 12.)  The question presented before the Court is whether the United States, as a general employer, can be held vicariously liable for the alleged negligence of Dr. Kuxhaus.  Whether Dr. Schwartz or Morristown Memorial qualify as a "special employer," based on the facts of this case, is an argument for another day.  Since Plaintiffs have failed to show that the Air Force

had either "direct," "broad," or "on-spot" control, the United States cannot be held vicariously liable.  Accordingly, Plaintiffs' claim under the FTCA is dismissed.[4]

In addition, the Court dismisses Plaintiffs' state law claims.  Plaintiffs assert federal jurisdiction, pursuant to 28 U.S.C. § 1331, under the FTCA, as well as pendant jurisdiction over state law negligence and loss of consortium claims under 28 U.S.C. § 1367.  As the Third Circuit has explained, "once all federal claims have been dropped from a case, the case simply does not belong in federal court."  *New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1504 (3d Cir. 1996).  In the absence of extraordinary circumstances, state claims should be dismissed without prejudice when federal claims are decided on summary judgment.  *Hewlett v. Davis*, 844 F.2d 109, 115 (3d Cir. 1988).  As such, the Court dismisses Plaintiffs claims in Counts One and Two.  *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Based on the foregoing, United States's motion for summary judgment is **GRANTED**.  Lacking federal question jurisdiction, Plaintiffs' state law claims in Counts One and Two are also **DISMISSED**.[5]  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**

---

[4]  Plaintiffs urge the Court to find "dual-liability" based on the Air Force's administrative control.  However, in *Galvao*, the Supreme Court of New Jersey declined to impose such liability in a more compelling context.  There, the general employer was a subsidiary to a special employer, the parent company.  The subsidiary only existed to supply union workers to the parent.  *Id.* at 464-66.  Even though the two companies were nearly alter egos, the New Jersey Supreme Court declined to hold the general employer jointly liable with the parent company.  *Id.* at 470, 471-73.  In the instant matter, the two entities are only tangentially related.  The Air Force's mission is to provide national defense, which exists separate and apart from Morristown Memorial's purpose of treating civilian patients.  The Court thus lacks a basis to impose shared liability.

[5]  Pursuant to 28 U.S.C. § 1367(d), any state law period of limitations applicable to Plaintiffs' state law claims "shall be tolled while the claim is pending [before the district court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).  While this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, Plaintiffs shall have the opportunity to pursue these claims in a New Jersey court of competent jurisdiction, if they so choose.